JERNIGAN *v.* LINCOLN.

5-300                                        264 S. W. 2d 836

Opinion delivered February 22, 1954.

*Julius C. Acchione* and *U. A. Gentry*, for appellant.

*House, Moses & Holmes* and *E. B. Dillon, Jr.*, for appellee.

GEORGE ROSE SMITH, J.  This is a suit brought by the appellee, Mrs. C. K. Lincoln, to enjoin the appellant, Ewell Jernigan, from trespassing upon the north fifteen

feet of a vacant lot belonging to Mrs. Lincoln. Jernigan's defense is that Mrs. Lincoln bought the lot with notice that Jernigan had an easement entitling him to use the fifteen-foot strip in controversy. Mrs. Lincoln denies that she had notice of the easement at the time of her purchase. The chancellor decided this issue of fact in favor of Mrs. Lincoln, holding that she purchased the vacant lot without notice of the unrecorded deed relied upon by Jernigan.

For some years the Lincoln family has owned a corner lot in Little Rock, fronting on Markham Street to the north. This lot is occupied by a commercial building which does not extend all the way to the southern boundary line at the rear of the building. In 1946 Jernigan purchased a cleaning plant that lies just west of the Lincoln building and that also fronts on Markham Street. This plant, unlike Mrs. Lincoln's building, occupies the entire lot upon which it is situated. Since there is no alley behind the two structures Jernigan realized when he purchased an interior lot that he would need a means of ingress to the back entrance of the cleaning plant. To that end he acquired, by a separate deed executed in connection with his acquisition of the cleaning plant, an easement over the north fifteen feet of the vacant lot that lies behind the two improved lots. Jernigan recorded the deed to the cleaning plant but failed to record the easement deed.

The right-of-way so acquired by Jernigan has actually been used rather infrequently, for there are trees along the strip which interfere with traffic. Instead, Jernigan has reached the back door of his plant by using a driveway that is situated on the unimproved rear portion of Mrs. Lincoln's corner lot. In 1950 Mrs. Lincoln's son Charles, who was then studying law, prepared for his mother's signature a letter by which she permitted Jernigan, for an annual consideration, to continue his permissive use of the Lincoln driveway.

In 1952 Mrs. Lincoln bought the vacant lot that lies behind the two buildings. It is not contended that she herself had any notice of Jernigan's unrecorded servi-

tude. Instead, Jernigan argues that Charles Lincoln, who conducted the negotiations for the purchase, was put on notice of the fact that the easement existed.

It cannot be said that the chancellor's decision is against the weight of the evidence. All the witnesses seem to have testified with complete candor. Charles Lincoln states that Wayne Coley, who owned the vacant lot, mentioned an easement only once, when he said: "Of course you know about Jernigan's easement." Lincoln, having in mind the right-of-way across the rear portion of the improved lot, replied: "Yes, I do, because I drew it up." Coley's recollection, on the other hand, is that he explained that the purchaser would not have the use of the entire lot, as he had given Jernigan an easement over the north edge of the property.

There is a rather convincing reason for accepting young Lincoln's version of the matter. Mrs. Lincoln's objective in buying the vacant lot was the acquisition of a building site that would extend southward from Markham Street for a distance of two lots. It is reasonable to believe that her son, who by then was a licensed attorney, would have been alert to any mention of an easement that would have defeated the purpose for which the property was being bought. The appellant tacitly concedes the force of this consideration by insisting not so much that Coley's testimony should be credited but rather that even Lincoln's own version of the transaction shows that notice was brought home to the purchaser's agent. The argument is that Jernigan's permissive right-of-way across the corner lot was technically a license rather than an easement, and therefore Charles Lincoln was at fault in assuming that Coley's reference to Jernigan's easement was intended to refer to the instrument that Lincoln himself had prepared. The test, however, is whether Coley's words would have put a reasonably prudent person upon inquiry, and we are not prepared to say that they would have. Laymen are likely to regard any right-of-way across a neighbor's land as an easement; so Lincoln was not necessarily careless in failing to explore the

possibility that Coley had in mind some servitude other than the one which Lincoln knew to exist.

Affirmed.

WARD, J., disqualified and not participating.